## DICKSON ET AL. *v.* THE INDIANAPOLIS COTTON MANUFACTURING COMPANY.

CONTRACT BY COPARTNERSHIP. — *Effect of Dissolution of Copartnership.— Abandonment of Contract.—Rescission.—Set-Off.—Pleading.*—In an action against the members of a copartnership as such, to recover for goods sold and delivered by the plaintiff to the defendants, wherein the latter answered asking damages, by way of set-off, for alleged breaches by the plaintiff of a contract in writing, entered into between the plaintiff and the defendants as such copartners, which contract was to continue for a specified term of years, the plaintiff replied, alleging, that, after the execution of the contract and before its expiration, such copartnership had ceased to exist, thereby working an abandonment of the contract by the defendants ; and also alleging, that, prior to such dissolution, the plaintiff had fully performed his part of the contract.

*Held,* on demurrer, that such contract, though entered into by the defendants in their copartnership name, was the joint contract of all the defendants.

*Held,* also, that the dissolution of the co-partnership did not work an abandonment of the contract, nor authorize the plaintiff to treat it as rescinded.

*Held,* also, such copartnership not having been dissolved by the death of any of its members, that the defendants have the right to perform their stipulations, under the contract, and to receive the benefits thereof.

*Held,* also, that the reply is insufficient.

From the Marion Superior Court.

*J. Buchanan, M. B. Williams* and *C. D. Whitehead,* for appellants.

*B. Harrison, C. C. Hines* and *W. H. H. Miller,* for appellee.

WORDEN, J.—The Indianapolis Cotton Manufacturing Company sued the appellants for goods sold and delivered.

Issue, trial, verdict and judgment for the plaintiff.

The defendants, in the third paragraph of their answer, alleged as follows:

"3d Paragraph. Defendants above named, further answering herein, would show to the court, that, on the 14th day of November, A. D. 1878, these defendants, under the firm name and style of C. Dickson & Co., were engaged in the mill furnishing business, in the city of Indianapolis, Indiana; that, as such firm, they had a large and lucrative trade, to the amount of $500,000 per year, in the sale of cotton warps and machinery and material of various kinds that were and are used by woollen mills in the manufacture of cloths of various kinds; that their said trade extended over a large extent of territory, including a number of the states of the Union; that they were purchasing their supplies for furnishing their customers from various mills other than the plaintiff's; that plaintiff at said date had then commenced the manufacture of warps at her mills, erected in the city of Indianapolis, Indiana, and at said time had not been able to obtain a market for her goods; that plaintiff solicited these defendants to give her the benefit of their said large and lucrative trade aforesaid, and solicited these defendants to introduce the merchandise of plaintiff into the market and among their customers; that defendants, on the said 14th day of November, 1868, at the instance and request of plaintiff, entered into a written agreement with plaintiff for the exclusive handling and sale of the manufactured articles of plaintiff, as specified in said contract; that said written agreement is filed herewith by copy marked 'Exhibit C,' and made a part of this paragraph of defendants' answer; that, by a large outlay of money, and by much labor and time bestowed by these defendants, they introduced said plaintiff's merchandise into the market, and built up a large and lucrative trade and demand for all of her good merchantable manufactured articles, as specified in said written agreement,

Dickson *et al. v.* The Indianapolis Cotton Manufacturing Company.

within six to twelve months after the date of said agreement; that defendants have in all things fully performed their part of said contract in good faith, and still continue to perform their part, as stipulated in said agreement, and are prepared and willing to continue the same until the time of the expiration of the five years as specified in said agreement; that plaintiff has in all things failed to perform her said agreement; she has failed to furnish said defendants with warps, when demanded, according to said agreement; that she disregarded said contract in every part thereof; that, for the year ending November 14th, 1869, plaintiff sold to the customers of the defendants and others warps to the amount of four hundred thousand dollars, in violation of said agreement; that she sold in each of the years 1870, 1871, 1872, and up to the com mencement of this action, in 1873, to wit, —— day of September, 1873, warps to the amount of $500,000 in each year; that plaintiff has failed and refused to account to defendants for the amounts due defendants upon said sales so made in violation of said contract; that defendants have often demanded of plaintiff a full accounting for all sales so made in violation of said agreement; that plaintiff damaged said defendants greatly in their general trade and business, by taking from them, in violation of said agreement, a large and lucrative trade in the goods and wares that were being sold by defendants, in the handling of said warps under the said agreement; that plaintiff failed to furnish good merchantable warps according to said agreement;—all of which has been to the damage of defendants in the sum of one hundred thousand dollars, up to the date of the commencement of this action; that defendants offer to set off against plaintiff 's demand so much of said sum due them as may be due plaintiff on balance herein, and they pray judgment over, in the sum of fifty thousand dollars, for damages up to the commencement of this

action by plaintiff, and ask that said contract be held a continuing contract, and be not merged in this action as to any damages accruing to defendants since the commencement of this suit."

"EXHIBIT C.

"This indenture witnesseth, that the Indianapolis Cotton Manufacturing Company has, this 14th day of November, 1868, bargained and agreed to give C. Dickson & Co., of Indianapolis, Ind., in consideration of C. Dickson & Co. selling only warps made by the above company, so far as they are able to furnish them, the exclusive sale of all warps manufactured by the said Indianapolis Cotton Manufacturing Company from time to time, for the period of five years from date hereof, excepting that they reserve the privilege of furnishing Messrs. C. E. Geisendorff & Co., of Indianapolis, all the warps they weave in their mills.

"The Indianapolis Cotton Manufacturing Company warrant all warps made by them to give satisfaction, and agrees to furnish them at the following list of prices, based upon strict middling cotton, at twenty-five cents per pound, in Cincinnati, O., markets:

"1200 end black warps No. 14 yarn 6¼, No. 16 yarn 5⅜,
"1400  "    "    "    "   "   "  7¼,  "   "   " 6⅜,
"1500  "    "    "    "   "   "  7¾,  "   "   " 6⅞,
per yard, and one cent per yard to be added to above for blue;

"1800 end white warps No. 16 yarn 6⅞,
"1800  "   black   "   "   "   "  7⅞,
"1800  "   blue    "   "   "   "  8⅞, per yard;
"1400 and 1500 end white warps one cent per yard, and 1200 end white warps three-fourths cent per yard, less than black warps.

"Other kinds and numbers of warps to be furnished in proportion to the above basis, and the prices of warps are to vary one-eighth (⅛) cent per yard for each

advance or decline of one (1) cent per pound on cotton as stated above, and C. Dickson & Co. to receive as commissions for selling warps one-fourth ($\frac{1}{4}$) cent per yard, and one (1) dollar each for all sized warps sold, and five (5) per cent. off on all dressed warps sold.

"And it is further agreed by the Indianapolis Cotton Manufacturing Company, that, should it become necessary at any time to reduce the above named price list of warps in order to compete with other warp manufacturers, that they will do so, and that they will refill empty warp beams for C. Dickson & Co. without extra charge for the same.

"It is agreed on the part of C. Dickson & Co., in consideration of the Indianapolis Cotton Manufacturing Company giving them the exclusive sale of their warps, that they will give them the benefit of all customers for warps, so far as the Indianapolis Cotton Manufacturing Company are able to furnish warps, and to use due diligence in prosecuting sales of said warps; and they further agree to pay for all warps furnished them during any month within sixty-five days from the fifteenth day of the succeeding month. C. Dickson & Co. are to have the privilege of selling all warps purchased by them prior to this date, and to represent the company as agents for the sale of warps.

"Signed and executed at Indianapolis, Ind., this fourteenth day of November, 1868.

"R. P. DUNCAN,
"Supt. Indianapolis Manufactory.
"J. C. GEISENDORFF,
"Pres't Co.
"C. DICKSON & Co.'

To the paragraph of answer above set out the plaintiff replied, amongst other things, as follows:

"2d Par. Said plaintiff, for a further reply to the third paragraph of the defendants' answer, says, that, after the execution of said written agreement, to wit:

On or about the 1st day of December, 1871, the said firm of C. Dickson & Co., composed of the said defendants, ceased to exist, and so, the plaintiff says, said defendants abandoned the said contract. And the plaintiff avers, that, from the time of the making of said contract up to the time the said copartnership ceased to exist, she fully performed all the requirements of said contract."

The defendants demurred to this paragraph of reply, for want of sufficient facts, but the demurrer was overruled, and the defendants excepted.

We are of opinion that the court below erred in overruling the demurrer to the reply.

The contract, to be sure, was entered into by the defendants as partners. The contract thus executed by the defendants as partners became the joint contract of all the defendants. *Crosby* v. *Jeroloman*, 37 Ind. 264. They were jointly bound, so far as we can perceive, to the same extent as if they had each signed the contract in their individual names. The fact that the defendants were partners, it seems to us, was of no special importance, in any aspect of the case, except that they might sign the contract in the firm name by one of the members of the firm. We do not see that the continuance or discontinuance of the partnership between the defendants affected, in any way, their obligations under the contract to the plaintiff, or the plaintiff's obligation to them. The cessation of the partnership, therefore, was not an abandonment of the contract on the part of the defendants, nor did it authorize the plaintiff to treat the contract as rescinded.

The partnership did not cease to exist by reason of the death of any of its members, as will be seen by the reply, which shows that the firm was composed of the defendants in the action.

In *Tasker* v. *Shepherd*, 6 Hurl. & N. 575, a contract, in some respects similar to that here involved, covering a

period of four years and a half, was held to be terminated before the expiration of the time stipulated for, by the death of one of the members of the firm, because it was construed to be for a period of four years and a half, subject to the condition that "all the parties so long lived."

In the case before us the partners are all living, and can perform the obligations resting upon them by virtue of the contract, as well without the continuance of the partnership as if it were continued; and the plaintiff has lost none of its rights, and is no way injured by the partnership between the defendants ceasing to exist.

Mr. Parsons says : "No dissolution, of any kind, affects the rights of third parties, who have had dealings with the partnership, without their consent. This is a universal rule, without any exception whatever." Parsons Partnership, 394.

One of the cases referred to by the above author is that of *Ault* v. *Goodrich,* 4 Russ. 430. The syllabus of the case above cited, in respect to the point under consideration, is as follows :

"A general dissolution of partnership between A. and B. does not operate to discharge A. from his responsibility for the subsequent conduct of B. in respect of the engagements of the partnership with third persons, made prior to the dissolution."

In 2 Collyer Partnership, 6th ed., by Wood, p. 894, the author says, in speaking of the above case from Russell :

"Upon this case it may be observed, first, that the facts are not satisfactorily stated ; and, secondly, that the judgment leads to the inference that the responsibility of Wilcox, the elder, for the conduct of Wilcox, the younger, did not turn upon the circumstance that they were partners together, but upon the circumstance that they were jointly intrusted with the management of the tree speculation. In this view of the case it was obviously immaterial whether the Wilcoxes had dissolved partnership or not."

So, in the case before us, the defendants were to be jointly entrusted with the sale of the plaintiff's goods, mentioned in the contract, for the period of five years; and it was obviously immaterial whether they dissolved or continued their partnership. The rights and obligations of the parties to the contract were in no manner changed or affected by the dissolution of the partnership, unless it be the rights and obligations of the defendants as between themselves. The defendants could make whatever arrangement they pleased as between themselves, so that they faithfully performed their contract with the plaintiff, and the plaintiff could not be affected thereby, or be heard to complain thereof.

This view of the question is conclusive to our minds; but it may be added that a partnership, dissolved for future operations, remains in force for the closing of the business of the concern.

Thus it is said by Mr. Collyer, Collyer Partnership, Perk. ed., p. 546 : "From the nature of a partnership, engagements may be contracted which can not be fulfilled during its existence, exposed as it is to sudden and arbitrary terminations; and the consequence, therefore, must be, that, for the purpose of making good outstanding engagements, of taking and settling all the accounts, and converting all the property, means, and assets of the partnership, existing at the time of the dissolution, as beneficially as may be for the benefit of all who were partners, according to their respective shares and proportions, the legal interest subsists, although, for all other purposes, the partnership is actually determined."

In *Waring* v. *Robinson,* Hoff. 524, 528, it is said, that " It is undeniable that the authority of each partner over unclosed matters continues after the dissolution."

In *Holmes* v. *Shands,* 27 Miss. 40, 44, it is said : " But the contract was made with the firm during the

existence of the partnership, and it was competent for the parties, ·after dissolution, to carry out a contract previously made, and in part performed. To that extent, the partnership would be considered in law as still subsisting."

See, also, *Houser* v. *Irvine*, 3 Watts & S. 345.

Some other questions are made which arose in the subsequent progress of the cause, which we deem it unnecessary to consider.

For the error in overruling the demurrer to the paragraph of reply which we have thus considered, the judgment below will have to be reversed.

The judgment below at general term is reversed, with costs, and the cause remanded for further proceedings in accordance with this opinion.