CLINCHFIELD FUEL Co. *v.* W. M. LUNDY & SON.[*]

### (*Knoxville.* September Term, 1914.)

1. PARTNERSHIP. Dissolution. Liability of retiring partner.
   Where, after a partnership entered into a contract to purchase
   coal to be delivered in monthly installments, the partnership
   was dissolved and the seller of the coal was notified that one
   of the partners had withdrawn from the firm and that the
   other would carry on the business, pay all debts, and collect all
   accounts, such notice authorized the seller to deliver the bal-
   ance of the coal to the partner who was continuing the busi-
   ness, but did not destroy the liability of the retiring partner
   to pay the contract price for the coal remaining undelivered.
   (*Post, pp.* 139-141.)

---

[*]On the question of assumption of debts on dissolution of part-
nership, see notes in 25 L. R. A., 274; 9 L. R. A. (N. S.), 49; and
48 L. R. A. (N. S.), 547.

2. PARTNERSHIP. Dissolution. Liability of retiring partner.
  Upon the dissolution of a partnership, the partner who assumed
    payment of the firm debts and took over its assets became the
    principal debtor and the retiring partner a surety only as
    between themselves, but they both remained liable as principal
    debtors to the creditors of the firm. (*Post, pp.* 141-143.)

Cases cited and approved: Bryan v. Henderson, 88 Tenn., 23;
  Croone v. Bivens, 39 Tenn., 339; Hollis Wright & Co. v. Staley,
  62 Tenn., 168; Prewitt v. Bunch, 101 Tenn., 742; Oakeley v.
  Pasheller, 4 Clark & F., 207.

Cases cited and distinguished: Dean v. Collins, 15 N. D., 535.

FROM WASHINGTON.

Appeal from Chancery Court, Washington County.
—HAL H. HAYNES, Chancellor.

THAD A. COX, for appellant.

HASKIEL H. DYER, for appellees.

MR. JUSTICE BUCHANAN delivered the opinion of the
Court.

This was a suit by the Fuel Company against W. M.
and Terry H. Lundy, as partners trading under the
firm name and style of W. M. Lundy & Son. The
chancellor granted a decree against W. M. Lundy for
$2,100.86, principal, and certain interest, which added
to the principal amounted to the sum of $2,307.36, and
one-half of the costs of the cause, and a decree against
complainant for the other one-half of the costs. There
was no appeal by W. M. Lundy from the above portion

of the decree, and no appeal by complainant from the part of the decree taxing it with one-half of the costs. The chancellor dismissed the cross-bill filed by W. M. and Terry H. Lundy, and from this part of the decree the cross-complainants prayed and there was granted to them an appeal, which they failed to prosecute by the execution of an appeal bond, so that this part of the decree is not in question here. The decree denied complainant a recovery against Terry Lundy for the amount of the principal and interest for which he was sued as a member of the partnership, and from this much of the decree the complainant appealed and has assigned error.

The material facts are as follows: On March 17, 1911, the partnership, W. M. Lundy & Son, entered into two contracts with the Fuel Company, by one of which contracts the partnership bought from the Fuel Company three thousand tons of lump Clinchfield coal at the price of $1.50 per ton of two thousand pounds, free on board cars at the mines, shipments to be made in equal installments monthly. By the other of such contracts the partnership bought of the Fuel Company one thousand tons of run of mine coal, at the price of ninety cents per ton, to the date October 1, 1911, and of $1 per ton for the remainder of the term of the contract, each ton to be two thousand pounds in weight, the grade of the coal to be No. 1, and shipments to be made monthly in equal installments.

Each of these contracts was to become effective on May 1, 1911, and to continue in effect until April 30,

1912. The principal sum for which the decree was rendered in the cause was the balance shown to be due the Fuel Company for coal shipped under these two contracts during this term for which they were to be effective, and the correctness of that balance is not in question.

In due course of mail after it was written, the Fuel Company received the following communication, dated December 8, 1911:

"Clinchfield Fuel Company, Spartansburg, South Carolina—Gentlemen: This is to give notice that, on November 30, 1911, the partnership of W. M. Lundy & Son was dissolved, Terry H. Lundy withdrawing from the firm. W. M. Lundy will carry on the business as heretofore, will pay all debts, and collect all accounts of the partnership.

"Yours truly,                W. M. LUNDY,
                                "TERRY H. LUNDY."

The general manager of the Fuel Company, on cross-examination by counsel for the Lundys, was asked if the company had received the above notice, and replied:

"Clinchfield Fuel Company received notice of the dissolution of the partnership of W. M. Lundy & Son. However, the Clinchfield Fuel Company did not release W. M. Lundy's son from the contract, and the contract stands W. M. Lundy & Son. The notice of dissolution was not accepted as indicating a desire by Mr. Lundy to cancel the contract. On the contrary, he continued to order coal thereunder at prices named therein and

paid therefor down to January. At the time of dissolution, the price named in the contract to Mr. Lundy was under the price obtained for shipments in the open market known as 'spot sales.' Had Mr. Lundy requested cancellation of the contract, succeeding shipments would have been made at the open market price, which was $1.75 or more per ton. We recognized Mr. W. M. Lundy as the head of W. M. Lundy & Son, his personal checks were sent in payment for all coal shipped prior to dissolution notice, and all shipments made therefor down to the time he withheld payment in January.''

It further appears that the balance on the account sued for was for coal shipped during the months of January, February, and March of the year 1912, and that payment had been made for all prior shipments, and that after receipt of the notice of dissolution all coal shipped by the Fuel Company was billed to W. M. Lundy, with the exception of a bill of date March 20, 1912, amounting to $72, unintentionally billed to the firm. After stating which the general manager further states:

''But the invoice price per ton of the coal was the same as named in the contract, because the contract was assumed by Mr. Lundy. Mr. Lundy was aware that the cancellation of his contract and the purchase of coal on the open market would have entailed an extra cost per ton.''

Under the facts disclosed, we cannot agree to the conclusion reached by the chancellor as to the nonlia-

bility of Terry H. Lundy. The contracts on which he was sued were made during the life of a general partnership of which he was a member, and he thereby became bound to make payment for the coal delivered under the contracts at the prices fixed by the terms of the contracts. By the dissolution agreement between him and his copartner, all of his partnership assets passed to his copartner, and the latter assumed the payment of all of the partnership debts. Along with the other assets which so passed to his copartner were the two contracts here in suit. The notice of dissolution served on the Fuel Company was proper authority from the retiring partner to that company to deliver the balance of the coal to the copartner who had taken over the assets and assumed the liabilities of the firm. That notice was also effective to advise the Fuel Company that the retiring partner would not be bound for new credits extended to the firm or the partner who had assumed the debts and taken over the assets thereof, but the notice was not effective to destroy the liability of Terry H. Lundy, the retiring partner, to pay the Fuel Company the contract price on delivery of the coal which remained undelivered when he retired from the firm; and this for the good reasons: (1) He became liable so to pay when the two contracts were signed. (2) He reaffirmed this original liability when by the dissolution notice he said in substance to the Fuel Company: Execute your contract, but instead of delivering the balance of the coal to the old firm, now extinct, make the delivery of it to

W. M. Lundy, my former partner, who has taken over the assets and assumed the debts of the defunct partnership.

In carrying out this agreement between the parties to whom it was bound under the two contracts to make delivery of the coal at the prices named (which by the way the Fuel Company did to its own hurt, coal having increased in value), that company did not waive its rights, acquired as stated, to look to the retiring partner for pay when it fulfilled its contracts, modified, as those contracts were, in respect of the person to whom delivery should be made. The Fuel Company was not bound to see the ulterior and sinister purpose, if such there was, working in the mind of the retiring partner to escape liability by means of the notice. It was well within its rights to act on the notice as it did, seeing in it only such significance as the law gives it, and consequently the Fuel Company waived no right when it acceded to the wish of the two partners, expressed by their act of dissolution, that delivery be made to one of them instead of to the firm.

It is true that, as between themselves, upon the dissolution, the partner who assumed payment of the debts of the firm and took over its assets became the principal debtor, and the retiring partner a surety only; but they both remained liable as principal debtors to the creditors of the firm. *Bryan* v. *Henderson,* 88 Tenn. (4 Pick.), 23, 12 S. W., 338; *Croone* v. *Bivens,* 39 Tenn. (2 Head), 339; *Hollis Wright & Co.* v. *Staley,* 62 Tenn. (3 Baxt.), 168, 27 Am. Rep., 759.

The doctrine of our cases above cited is supported by a well-reasoned opinion of the North Dakota supreme court in *Dean* v. *Collins,* reported in 15 N. D., 535, 108 N. W., 242, 9 L. R. A. (N. S.), 49, where an elaborate note reviewing the authorities may be found, 125 Am. St. Rep., 610, 11 Ann. Cas., 1027. That portion of this note which deals with the question we are considering begins on page seventy-six of 9 L. R. A. (N. S.), where a large collation of authority sustaining the doctrine of our cases appears.

It is true, as stated in *Dean* v. *Collins,* supra, that by some courts it is held that where there is a dissolution of a partnership, and an agreement among the partners by which one takes over the assets and assumes the debts of the firm and the other retires, and a creditor has notice thereof, but is in no way a party to it, the creditor, after receiving such notice, must treat the retiring partner, not as a joint debtor, but as a surety. But it is explained in *Dean* v. *Collins* that the doctrine of the courts which so hold is founded on a misunderstanding of the facts of the case of *Oakeley* v. *Pasheller,* 4 Clark & F., 207, where it appeared that the creditor had consented to the dissolution agreement between the partners, and was therefore held bound to treat the retiring partner as a surety only. However this may be, we think the view best supported by reason and authority is the one held by our cases supra, and to that we adhere.

There was in the present case no waiver or abandonment by the Fuel Company of the liability to it of

Terry H. Lundy. "To constitute an abandonment or waiver, there must be a clear, unequivocal, and decisive act of the party, showing a determination not to have the benefit in question, with a full knowledge of his rights in the premises." *Prewitt* v. *Bunch,* 101 Tenn., 742, 50 S. W., 748, and cases cited.

From the views above expressed, it results that so much of the decree of the chancellor as denied the joint and several liability of Terry H. Lundy to pay the principal and interest of the debt sued for in this cause will be reversed, and decree here will go against him therefor, and also for all the costs of the cause. The costs of the chancery court will be paid as decreed by that court.