[Civ. No. 1587.   Second Appellate District.—March 3, 1915.]

MISSION FIXTURE COMPANY, Respondent, v. GEORGE E. POTTER, Appellant.

ACTION FOR CONVERSION—CONSIGNMENT OF SAMPLE GOODS—DISSOLUTION OF PARTNERSHIP—WHEN RETIRING PARTNER NOT LIABLE.—Where certain sample goods were consigned to a partnership for the mutual benefit of both consignor and consignee, and the partnership was subsequently dissolved and the business thereafter conducted by one of the partners, of which notice was directly given the consignor

but the latter allowed the consigned goods to remain with the remaining member of the former partnership, who continued to conduct the business for a year and a half after such dissolution, for the benefit of the business then being conducted, the consignor was estopped thereafter from making any claim against the retiring partner for conversion of the goods by the partner who had continued to conduct the business.

ID.—LIABILITY FOR SALE OF GOODS ON EXECUTION.—In such a case where, after the partner who continued the business had abandoned it, the defendant, by an action brought to recover a debt due him from his former partner, took possession of a small portion of the stock found in the place of business after the abandonment, and caused a sale thereof to be made under execution and caused the possession of the property to be transferred to another person, the defendant was liable to the consignor for conversion of these goods and a judgment against him for their value was proper.

ID.—PARTNERSHIP—LIABILITY OF RETIRING PARTNER.—There is no question as to the law which declares that a retiring partner may be held for the obligations of the copartnership theretofore created.

APPEAL from a judgment of the Superior Court of Santa Barbara County and from an order denying a new trial. S. E. Crow, Judge.

The facts are stated in the opinion of the court.

B. F. Thomas, and Richards & Carrier, for Appellant.

Canfield & Starbuck, for Respondent.

JAMES, J.—This action was brought to recover damages for the alleged conversion of a certain lot of personal property. The alleged value of all of the property claimed to have been converted was the sum of $337.32. The court in entering judgment in favor of the plaintiff first determined that that recovery should only be for the sum of fifty dollars, which was the value of only a portion of the property described in the complaint. Thereafter a motion was made, under the provisions of section 663 of the Code of Civil Procedure, by the plaintiff that the court enter upon the findings of fact as made a different judgment, and this motion was granted and a judgment for the sum of $320.26, together with costs, was then entered in favor of the plaintiff. Defendant made a motion for a new trial and the same being denied,

it took this appeal, which is from the judgment, as well as from the order referred to.

The property alleged to have been converted consisted of two lots of gas and electric fixtures which were consigned to defendant and one Fred R. Carrel, who were doing business as a copartnership at Santa Barbara under the name of Santa Barbara Electric Company. These consignments were made in July and August of the year 1909. About one year later the partnership existing between the defendant and Carrel was dissolved, Carrel purchasing the interest of defendant Potter and continuing the business theretofore conducted by the copartnership, under the same name. Notice of the dissolution and change was given directly to the plaintiff herein. The consigned goods were goods to be used as samples from which orders might be made to the plaintiff which was a manufacturer of such articles. The consignments were made in such a way as to create a contract of bailment from which the parties derived mutual benefit. On the one hand, the bailees were enabled to exhibit in their store samples of various kinds of fixtures without being put to the expense of paying for such samples, and, on the other hand, the consignor was benefited by the orders which would be received for merchandise of the kind shown by the samples furnished. It was agreed that these fixtures should remain in the possession of the bailees subject to being returned at any time to the bailor upon its demand. After the dissolution of the partnership between Carrel and Potter, Carrel continued in the business and the sample fixtures held on consignment remained with him. They were allowed to remain there for the purposes of the business which was thereafter conducted by Carrel. They were allowed to remain there by the plaintiff because of the benefit which it was presumed would accrue to it through sales to be made by Carrel of fixtures of the kind shown by sample. The trial court by its findings determined that all of the consigned fixtures were left in the possession of Carrel in August, 1910, when Potter withdrew from the firm, and that notice of the dissolution was given to the plaintiff; that the plaintiff continued thereafter its business relations and dealings with the said Carrel; that thereafter Carrel abandoned the business and all of the stock and materials thereof and left the city of Santa Barbara, leaving only of the two lots of consigned fixtures a small part,

the value of which was fifty dollars; that the remainder of the consigned fixtures could not then "or since and cannot now be found." A finding follows to the effect that the defendant here took possession of the small lot of fixtures left by Carrel which belonged to the consignments and converted the same to his own use. If it may be said that these findings are sufficient to show a conversion of all of the fixtures and show facts which would make the defendant responsible therefor in damages, then it must be said that the evidence does not sustain such findings. As to the small lot of fixtures for the value of which the court first entered judgment, we think that such a judgment was warranted not only by the evidence, but by the findings.

After Carrel abandoned the business, the defendant, by an action brought to recover a debt due him from Carrel, took possession of all of the stock found in the place of business of Carrel and caused a sale thereof to be made under execution. It may be urged that the instructions of the defendant, who was the plaintiff in that action, to the officer making the sale, provided only for a sale to be made of the property of Carrel; but whether that is true or not seems immaterial, as it sufficiently appears that all of the merchandise found in Carrel's place of business was appropriated by the defendant, and whether he could under such a sale give good title matters not as he did in fact cause the possession of the remainder of the consigned goods to be transferred to another person. But as to the larger part of the consignments, as segregated by the trial judge in his findings, the same conditions of fact or as to the law do not apply. We think that when the firm of Potter & Carrel was dissolved and the plaintiff was given notice of that fact, and, understanding clearly the situation, proceeded to deal with Carrel as the new owner of the business it thereby estopped itself from thereafter claiming that the responsibility of Potter continued as to the goods formerly consigned to the copartnership. It should be kept in mind that the consigned goods were allowed to remain with Carrel for a year and a half after the dissolution of the partnership occurred. They were left there, not for the purpose of benefiting the firm or the firm's business as it had previously existed under the copartnership, but directly for the benefit of the business which was continued thereafter, by Carrel, the consideration moving to the plain-

tiff being that it would secure orders for goods as per samples which made up the consigned lots.   The mutual considerations were continuing; the property could have been retaken upon demand at any time by the plaintiff and all obligation required from it would have been thereby discharged.   There need be no question made as to the law which declares that a retiring copartner may be held for the obligations of the copartnership theretofore created.   The text-book rule is uniform and the decisions are without conflict to that point. (See Parsons on Copartnership, sec. 296, and cases cited.) In this case, when Potter notified the plaintiff that he had withdrawn from the firm, plaintiff had the option to demand the return of the goods, or to continue business with Carrel under the same or different arrangement with respect to the consigned merchandise.   It chose to follow the latter course and allowed the sample stock to be left in Carrel's place of business solely because of benefits to be received in the future from the business as conducted by Carrel.   Under all of these facts, surely it must be said that impliedly a new contract was made with the new proprietor of the business formerly conducted by the copartnership and that the responsibility of the defendant as a copartner had ceased before the alleged conversion was made.

We think that the judgment should be reversed.

The judgment and order are reversed.

Conrey, P. J., and Shaw J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on April 2, 1915, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 29, 1915.