LINDLEY *v.* SEWARD ET AL.

[No. 15,766. Filed February 11, 1937. Rehearing denied May 13, 1937. Transfer denied June 23, 1937.]

602

*Condo, Van Atta & Batton,* for appellant.

*Walter G. Todd, Ray D. Gmies, Lett & Lett, Overson & Manning, Browne, Campbell & Gemmill, David M. Bell,* and *Alvah Lucas,* for appellees.

WOOD, C. J.—May 16, 1936, the appellant filed a transcript of a portion of the proceedings of the lower court, together with his assignment of errors properly

attached thereto, in the office of the clerk of this court, and it was on the same day docketed as a cause pending herein on appeal from a judgment of said lower court under the above title and number.

June 12, 1936, Thomas H. Seward, Oscar Phillips, Luther Pulley, Dr. J. T. Barnett, Dr. J. C. Knight, for themselves and all other like creditors of The Citizens State Bank of Jonesboro, Indiana, and Ralph Dickey, appellee herein, filed their verified petition to substitute as parties appellee the legal representatives of one William Schrader, now deceased. This petition is now sustained and the substitution of parties is ordered made as therein prayed.

June 12, 1936, the above named and designated appellees filed in the office of the clerk of this court, under the above entitled cause, what purports to be a transcript of a portion of the proceedings had in the lower court, in the cause in which this appeal is being prosecuted, including therein the original bill of exceptions containing the evidence. This transcript also has attached to it what said appellees are pleased to designate as an "assignment and cross-assignment of errors." From this purported transcript it appears that it was prepared by the clerk of the Grant Superior Court in response to the request contained in a special praecipe filed in his office May 22, 1936, by the above named and designated appellees. It was not brought into and made a part of the record in this cause in response to a writ of *certiorari* issued out of this court to the clerk of the Grant Superior Court.

September 28, 1936, the appellees, Ella Schrader, Anna Schrader, Clara Schrader Young, Edward A. Schrader, Harry J. Schrader and Otto H. Schrader, filed a motion in this court to strike out and not to consider the record and transcript of the record below, filed in this court June 12, 1936, by their co-

appellees Thomas H. Seward et al. Whether or not the several grounds upon which this motion is based are tenable, are questions which it is not necessary for this court to determine. An examination of the certificate of the clerk of the Grant Superior Court, attached to said transcript filed June 12, 1936, shows that it is signed by the clerk, but said certificate does not bear the seal of the court. Section 2-3222 Burns 1933, §496 Baldwin's 1934, as interpreted by our Supreme and Appellate courts, requires a transcript of the record in a cause in order to present any errors to either court for its consideration, to be certified by the signature of the clerk and sealed with the seal of the court. "It is the imperative requirement of the statute that the seal of the court below must be affixed to the certificate, as well as that the clerk shall suscribe his name thereto, to present any question to this court." *Fidelity, etc., Co.* v. *Byrd* (1900), 154 Ind. 47, 55 N. E. 867; *Johnson, Admr.* v. *Johnson* (1900), 156 Ind. 592, 60 N. E. 451; *Comstock* v. *Stoner* (1902), 30 Ind. App. 529, 66 N. E. 501. Because it is not properly certified, the transcript filed in the clerk's office by Thomas H. Seward et al., appellees, June 12, 1936, is not before us for any purpose. This leaves for our consideration only such questions as are presented by the transcript filed in this court by the appellant May 16, 1936.

March 28, 1932, the appellees, Thomas H. Seward, Oscar Phillips, Luther Pulley, Dr. J. C. Knight, and Dr. J. T. Barnett, for themselves and all other like creditors of The Citizens State Bank of Jonesboro, Indiana, as plaintiffs, brought suit against the appellant and other named persons as defendants, in the Grant Superior Court for the purpose of recovering from said defendants money alleged to be due and owing from them as partnership owners of said bank, which was insolvent, to the plaintiffs as depositors in said bank.

December 21, 1934, the appellee, Ralph Dickey, as sole plaintiff, brought suit in the Grant Circuit Court against the same defendants for the same purpose. The complaints in each of these actions were practically the same. June 28, 1935, this cause was transferred to the Grant Superior Court. September 9, 1935, on motion of the parties, the cause filed in the Grant Circuit Court, by Ralph Dickey as plaintiff was consolidated with the cause filed in the Grant Superior Court by Thomas H. Seward et al and they were thereafter treated and tried as one cause of action.

The issues on which the cause was tried consisted of a complaint in one paragraph, and an answer in general denial. On request of the parties, the court found the facts specially and stated its conclusions of law thereon, to the effect that the plaintiffs were entitled to recover from the defendant, Lee R. Lindley, the appellant here, the sum of $31,547.95, pursuant to which judgment was rendered. Appellant appeals, assigning as error for reversal, that the court erred in its first and third conclusions of law. From the record before us, it appears that the appellant did not file a motion for a new trial, and the evidence is not in the record. The appellant's sole contention, as we interpret it, is that the special finding of facts is not sufficient to sustain the lower court's conclusions of law numbered one and three stated thereon.

By excepting to the conclusions of law, the appellant admits for the purpose of the exceptions only, that the facts upon which the conclusions are based have been fully and correctly found, limited however, to the facts found within the issues formed by the pleadings. 2 Watson's Work Practice, Sec. 1609, and authorities there cited. The appellant did not see fit to controvert the truth of the facts contained in the special finding, by filing a motion for a new trial. It is

the law, sustained by a long unbroken line of authorities, that the special finding of facts must contain all the facts necessary to entitle the party to a recovery, in whose favor the conclusions of law are stated. And on appeal all facts not embraced within the special finding, will be deemed as not proven by the party having the burden of the issue, and the failure to find a fact essential to recovery will be regarded as a finding against the party having the burden of proving the same. 2 Watson's Works Practice, Sec. 1594, and authorities there cited.

". . . where the primary facts found lead to but one conclusion, or where such facts are of such a character that they necessitate the inference of an ultimate fact, such ultimate fact will be treated as found by the trial court and sufficient on appeal.. In such instances the facts are sufficiently found, though there may be a technical defect of statement in the finding. If the finding of facts contains enough ultimate facts to support the judgment, it will be sufficient, though it may not find all the issuable facts and may contain primary or evidentiary facts. Furthermore, in determining whether conclusions of law are supported by a special finding of facts, it is necessary to bear in mind the rule that 'a special finding, like a special verdict, a series of instructions, or the like must be considered as a whole, and it cannot be dissected into fragmentary parts and successfully assailed in detail. One part may be considered in connection with other connected parts, or parts referring to the same transaction, and if, taken as a whole, the finding legitimately supports the judgment, it will be upheld.' And in determining whether the judgment is thus supported, all intendments and presumptions are in favor of the finding rather than against it. *National Surety Co.* v. *State* (1913), 181 Ind. 54, 103 N. E. 105, 107; *Mount* v. *Board of Com'rs* (1907), 168

Ind. 661, 80 N. E. 629, 14 L. R. A. (N. S.) 483; *Harris* v. *Riggs* (1916), 63 Ind. App. 201, 112 N. E. 36." *Stewart* v. *Flynn* (1936), 101 Ind. App. 692, 695, 200 N. E. 706. These rules outline the course to be pursued in an examination of the record before us.

The complaint on which the cause was tried, in so far as it stated a cause of action against appellant, alleged the organization of the bank as a private partnership; that in the month of September, 1930, because of its insolvency it was placed in receivership for the purpose of liquidating its affairs; "That prior to the appointment of receiver herein, the defendant, L. R. Lindley, to wit; up to and including the 13th day of May, 1930, was a partner and shareholder in said bank, but on said day sold and transferred his interest in said bank and partnership to the defendant herein" . . . "Plaintiffs further aver that for a long time prior to the 13th day of May, 1930, the defendant, L. R. Lindley, was a partner in said bank and owned an interest in same and was a shareholder thereof, and that immediately prior to the said 13th day of May, 1930, he, the said Lindley, became cognizant of the fact that said bank was hopelessly insolvent and that same had been hopelessly insolvent for a long time prior to said day; that he well knew that as a partner thereof, he was liable to the creditors of said bank and about said time, began to make such arrangements to transfer and dispose of his interest in said bank as might eliminate him as a partner therein and discharge any liability to which he might be subjected by reason of his partnership interest, and in pursuance of his intention to dispose of his said interest, he did on the 13th day of May, 1930, sell, transfer and assign to the defendant, Watson D. Jay, for a nominal consideration, his share and interest in said partnership, with the sole intention and purpose to relieve himself of any liability to the creditors of said

bank, well knowing at the time said bank was insolvent and had been in such a state for a long time prior thereto; That said defendant, L. R. Lindley, is by reason of the foregoing facts, liable to account to these plaintiffs for the money due them as creditors of said bank."

That the plaintiff's several claims were for money on deposit in said bank at the time it was closed, having been on deposit for different lengths of time prior to the appointment of the receiver; that there was a deficit between the total amount of deposits and the funds to be realized from the assets of the bank by the receiver in in the sum of approximately $100,000.00; that the total amount of deposits of all forms in the bank when it closed aggregated $123,000.00 and but 20% had been paid on the plaintiffs' claims, with a possibility that an additional 5% might be paid. The complaint closed with a prayer for judgment against all the defendants thereto, including appellant.

The facts as found by the court, in so far as they in any way relate to the appellant's connection with the bank, and his liability to the plaintiffs, are as follows, we quote:

"1.   That The Citizens Bank of Jonesboro, Indiana, referred to in the complaint herein was organized in 1906 as a partnership and private banking institution and continued to be operated and managed and its business was conducted as a private bank up to the time said bank ceased doing an active business and that it was operated as a partnership from the time of its organization to the 6th day of September, 1930, at which time its active business was suspended and said bank closed and the said bank was during all the time it conducted an active business operated and controlled and supervised under the laws of this state regulating private or partnership banks then in force.

"2.   That on the 13th day of May, 1930, and prior thereto and at all times thereafter said bank was ex-

clusive of the individual worth of the partners, wholly insolvent. That said Citizens Bank of Jonesboro, Indiana, was closed for business on September the 6th, 1930, and was placed in the hands of a Receiver by the Grant Circuit Court soon thereafter and its affairs are still in charge of one Frank M. Hundley as Receiver. That in the administration of such Receivership nearly all the property and assets of the bank have been reduced to cash and a distribution of 25% of all the plaintiffs' claims have been paid by the Receiver and that the Receivership will pay a further dividend of 3% of the total liability.

"3. That the defendants Lillian Prickett, Olin Gordon, Rose Maloy, Anna R. Halpin, Benjamin Bloch, Watson D. Jay, Albert R. Lazure and Ella Schrader, Trustee, were the owners of the stock and of the partnership assets of said bank at the time the receiver was appointed on or about September 6th, 1930.

"4. That on the 10th day of June, 1913, a certificate of stock or interest in the said Citizens Bank of Jonesboro, Indiana, for five shares of $40.00 each was issued to the defendant Lee R. Lindley, who continued to own the same until the 13th day of May, 1930, when the said defendant Lee R. Lindley, sold, transferred, assigned in writing and delivered to the defendant Watson D. Jay of Jonesboro, Indiana, the said certificate of stock and interest in said bank for the sum of $25.00 in cash. That thereafter on the 13th day of May, 1930, The Citizens Bank of Jonesboro, Indiana, notified the Auditor of State and The State Bank Commissioner of Indiana at Indianapolis, Indiana, in writing that said defendant Lee R. Lindley had sold, transferred, assigned and delivered his said certificate of stock and interest in said bank to the said Watson D. Jay and that the said defendant Lee R. Lindley also notified the State Banking Department likewise that on the said 13th day of May,

1930, the said assigned certificate or interest was canceled on the books of The Citizens Bank of Jonesboro, Indiana, and a new certificate therefor was issued and delivered to the said Watson D. Jay and in his name. That prior to May 13th, 1930, a printed list of the stockholders, including those mentioned in special finding No. 3 together with the defendant Lee R. Lindley, was posted in said bank immediately to the left of the window, but that on said date a new list was posted in the same place and in the same manner, but with the name of defendant Lee R. Lindley, omitted and in which the name of W. D. Jay, defendant herein, was included and that said list continued to remain in the same position until the time the Receiver was appointed as set out in these findings. That on the 13th day of May, 1930, the defendant Lee R. Lindley ceased to be a stockholder or partner and ceased to own any interest whatever in The Citizens Bank of Jonesboro, Indiana, and that after said date all his interest therein was owned continuously by the defendant Watson D. Jay.

"7. That the several owners of the capital stock of said Citizens Bank of Jonesboro, Indiana, never at any time filed any notice in the office of the clerk of the Circuit Court of Grant County, Indiana, setting forth the names of the several owners of said bank or of the capital stock thereof, who conducted the business of said bank under the name and style of Citizens Bank of Jonesboro, Indiana.

"15. That after the 25% dividend has been deducted the amount due the plaintiffs and other creditors as against the owners of the stock and partners in The Citizens Bank of Jonesboro, Indiana, as of the date of September the 6th, 1930, is $85,807.88. That the plaintiffs and creditors are entitled to interest at the rate of 6% upon their unpaid claims, taking into consideration the payment of dividends and the date thereof, and that

said interest amounts to the sum of $23,740.18 and that the total remaining unpaid plaintiffs and creditors consisting of the original unpaid amount and interest is $109,548.06. That a further dividend of 3% will be paid by the Receiver of the Citizens Bank of Jonesboro, Indiana, which dividend will amount to the sum of $3,-432.31, and that the amount of said dividend when deducted from the sum of $109,548.06 leaves a balance of $106,115.75 due and owing the plaintiffs and creditors as against the owners and partners of said bank at the time the Receiver was appointed September the 6th, 1930.

"16. That the amount due and owing the plaintiffs and creditors of said bank as of May the 13th, 1930, at the time the defendant Lee R. Lindley withdrew as a partner in said bank, after the subsequent withdrawals by said plaintiffs and creditors has been deducted, amounts to the sum of $27,398.68, making a total sum of the balance of the original claim and interest as against the said defendant Lindley in the sum of $34,980.26. That the Receiver will pay an additional dividend of 3% in the amount of $3,432.31; *leaving an unpaid balance due the plaintiffs and creditors as of May 13th, 1930, in the sum of $31,547.95.*" (Our italics.)

"16½. That on or prior to May 13, 1930, certain creditors of the said Citizens Bank of Jonesboro, Indiana, were owners and holders of certificates of deposit in said bank, and that subsequent to said date, to wit: May 13, 1930, and prior to September 6, 1930, said creditors presented said certificates to the proper officials and agents of said bank, who took, retained, and canceled said original certificates, and issued to the creditors presenting the same, new certificates of deposit in said bank, in lieu of the original certificates, and that the new certificates were outstanding and unpaid when the receiver was appointed for said bank on Sep-

tember 6, 1930. With reference to these new certificates of deposit the Court finds the amount of the same to be Thirteen Thousand One Hundred and Fifty-Five and 55/100 ($13,155.55) Dollars and that the same is an obligation of the partners and owners of said bank on September 6, 1930, but that none of said new certificates of deposit or the amount evidenced thereby issued after May 13, 1930, nor any part thereof is an obligation of the defendant, Lee R. Lindley, who the Court finds had withdrawn as a partner in said bank before said new certificates of deposit were issued."

"17. That the creditors of said Citizens Bank of Jonesboro, Indiana, including these plaintiffs, are many in number, that not all are interested to the same extent in the funds that may be paid on the judgment to be rendered herein and that it is necessary to distribute the funds, taking into consideration the source from which the fund is derived and the unequal rights of the creditors thereto, and that a receiver should be appointed to receive and distribute said funds to the creditors under order of court and as the interest of the creditors may appear."

The conclusions of law of which the appellant complains are as follows: "1. That as between the plaintiffs and the defendants Lillian Prickett, Rose Maloy, Anna R. Halpin, Watson D. Jay, Ella Schrader, Trustee, Fred Schrader, Jr., William Schrader, and Lee R. Lindley the law is with the plaintiffs.

"3. That as between the plaintiffs and the defendant Lee R. Lindley, the plaintiffs are entitled to recover from and to judgment against said defendant Lee R. Lindley, and as a part of the aforesaid judgment, in the sum of Thirty-one Thousand Five Hundred Forty-Seven and 95/100 ($31,547.95) Dollars, and costs."

It is agreed between the parties to this cause, that the Citizens Bank of Jonesboro was a private partnership

bank organized and operated under and pursuant to the provisions of Chapter 109, Acts 1905, p. 182, as amended by Chapter 113, Acts 1907, p. 174; Sections 18-2701 to 18-2714 Burns' 1933, inclusive, §§8028 to 8042 Baldwin's 1934, which is, "An act to regulate and supervise the business of banking by individuals, partnerships or incorporated persons."

In their brief counsel for appellant say the sole and only question presented by this appeal is, "Does the statute, Acts 1907, p. 174, concerning private or partnership banks, under the facts found by the court below, create any liability whatsoever against the appellant in favor of the depositors and creditors of The Citizens Bank of Jonesboro?"

It is asserted that by the passage of the above acts the legislature intended to and did abrogate the common law rules of partnership and that the express provisions of the acts negative any other law or statute with reference thereto.

That the Legislature in enacting the Act of 1905, as amended by the Act of 1907, only intended "to regulate and supervise the business of banking by individuals, partnerships or unincorporated persons," as it had a right to do under the police power of the state, and that it did not intend to abrogate all the principles of law controlling partnerships, as they existed previous to the passage of said act is no longer a debatable question in this state. *State* v. *Richcreek* (1906), 167 Ind. 217, 77 N. E. 1085. In that case the court in holding the act of 1905 constitutional said (p. 222) : "The *quasi*-public nature of the banking business, and the intimate relation which it bears to the fiscal affairs of the people and the revenues of the State, clearly bring it within the domain of the internal police power, and make it a proper subject for legislative control. Bankers invite general deposits primarily for their own profit, and usually obtain a meas-

ure of public patronage, and the expediency of guarding the people against imposition, extortion, and fraud, of affording efficient means of detecting irregular practices, and of learning the true financial condition of the bank and the necessity of preserving the confidence of patrons in its solvency and of protecting their interest in case of insolvency, justify inspection and control by the state. When the sovereign people of a state, acting through the legislature find such police regulation necessary to protect public health, safety, or morals, to prevent fraud or oppression, or to promote the general welfare, the power to act in supreme, subject only to such limitations as are imposed by the fundamental law. The question as to what regulations are proper and needful is primarily for legislative decision, yet when the police power is used to regulate a business or occupation which in itself is lawful and useful to the community, the courts, if called upon, must determine finally whether such regulations as may have been prescribed are so far just and reasonable as to be in harmony with constitutional guaranties." All of which indicates a clear manifestation that our Supreme Court regards the act as a regulatory measure and nothing more.

In the very recent case of *Hall* v. *Essner* (1934), 208 Ind. 99, 193 N. E. 86, the appellant contended, (1) That by force of the provisions of Chapter 113, Acts 1907, p. 174, private banks subject thereto were in law corporations and the liability of stockholders therein was governed by Section 6, Article XI, of the State Constitution; and (2) That even if private banks were not corporations they were included in the term "every bank and banking company" as used in Sec. 6, Article XI, of the State Constitution and that therefore the stockholders in such private bank should be individually responsible only to an amount, over and above their stock, equal to their respective shares of stock, for all

debts or liabilities of said bank or banking company. In answering both of the above contentions in the negative, the court was called upon to and did determine the intent of the Legislature in passing the Act of 1907 and construed the meaning thereof. Among other things the court in its opinion in that case said: "This case upon its merits, involves this single question: Are the 'stockholders' in a private bank subject to the common law liability of partners for debts of the bank, or is their liability limited by §6 Art. XI, of the Indiana Constitution to an amount equal to 'their respective shares of stock'?"

Continuing its opinion the court further said (p 106) :

"But the ultimate judicial injury is whether the legislative intent is to create a legal individuality apart from, and legally independent of, the natural persons who are interested in the enterprise in question. If an entity with legal individuality is created it follows that this legal person possesses the ordinary corporate advantages, unless some appropriate legislative action expressly provides otherwise. *On the other hand if a legal individuality is not created by the statutes which affect the conduct of the enterprise in question then the natural persons interested in the enterprise incur all the obligations and liabilities of common law partners, except insofar as these are limited by statute or enforceable contracts.* (Our italics.)

"We have pointed out (*supra,* p. 103) that the Act of 1907 does not purport to create corporations to conduct a banking business under the terms of the act; but on the contrary, expressly declares its purpose to be 'to regulate and supervise the business of banking by individuals, partnerships or unincorporated persons.' Further, we cannot imply a legislative intent to create banking corporations from the provisions of the act which give to 'individuals, partnerships or unincor-

porated persons' engaged in the banking business certain business advantages which are enjoyed by corporations *in face of the provisions which clearly recognize the unlimited financial liability of the owners of the banking business for the obligations of the bank.* Section 12 authorizes the bank to sue or to be sued 'under the name under which such bank is authorized to transact its business' and then leaves no question that the suit is by or against the individual owner, or owners, under the business name of the bank by providing that 'any judgment obtained against any such bank shall be valid and binding against all the persons interested therein.' *It is clear from §11 that the legislative intent was to treat the owners of a private bank as partners as respects debts of the bank. This section gives depositors a first lien on the assets of the bank and then expressly provides that for any balance the depositors shall share in the general assets of the 'owner or owners, alike, with general creditors.'* (Our italics.)

"We conclude that the Act of 1907 'to regulate and supervise the business of banking by individuals, partnerships or unincorporated persons' does not create banking corporations although the effect of some of the provisions therein is to give to partnerships some of the legal advantages which corporations enjoy. A private bank owned by 'individuals, partnerships or unincorporated persons' and organized and conducted in accordance with the provisions of the Act of 1907 corresponds closely to the type of business organization known as a joint stock company, which is a 'species of partnership'."

\* \* \* \*

"We hold that the Bank of Tocsin is an unincorporated association and that liability of the owners thereof is not affected by §6 of Art. XI of the Constitution of Indiana."

While it was undoubtedly the intention of the Legislature to pass "An Act to regulate and supervise the business of banking by individuals, partnerships or unincorporated persons," which would confer upon such persons or organization some rights which they did not enjoy under the then existing law and to confer upon their creditors certain advantages not enjoyed by them under the then existing law, we do not find anything in the act of 1907 which warrants the conclusion that it is all inclusive and that by its passage the legislature intended to abrogate the existing rules of law pertaining to partnerships. On the other hand we think it is cumulative and is intended to add to and strengthen the provisions of the existing law relating to partnerships engaged in the banking business.

It is well established by the authorities that "a partner who has retired from a firm remains liable as principal after that time on all firm obligations incurred previous to his retirement. This rule holds even where his copartners or the new firm have agreed to discharge all such obligations, for while he would not be liable to contribute to the copartners on such obligations, he is bound to the creditors who contracted with the firm when he, as a member of the firm, was a principal in the making of the contract, except in cases where the creditors have agreed to accept and substitute the liability of the continuing partners or new firm, or have become estopped to hold the retiring partner." 1 Rowley Modern Law on Partnerships, sec. 556, p. 705; Parsons on Partnership (4th. Ed.) sec. 313, p. 400; Lindley on Partnership (9th. Ed.) p. 293; 47 C. J. sec. 585, p. 1027; 20 R. C. L. sec. 215, p. 981; *Dickenson* v. *Indianapolis, etc. Co.* (1878), 63 Ind. 9; *Doxey's Estate* v. *Servin* (1902), 30 Ind. App. 174, 65 N. E. 757; *Dean* v. *Collins* (1906), 15 N. D. 535, 108 N. W. 242, 9 L. R. A. (N. S.) 49, note following this case in 9 L.

R. A. (N. S.) 76; *Clenchfield Fuel Co.* v. *Lundy* (1914), 130 Tenn. 135, 169 S. W. 563, L. R. A. 1915B; *Julius Andrae & Sons Co.* v. *Peck* (1914), 176 Mo. App. 61, 162 S. W. 1059; *Mission etc Co.* v. *Potter* (1915), 26 Cal. App. 691, 148 Pac. 223.

One of the predominant reasons for the rule was very aptly stated by the court in the case of *Dean* v. *Collins, supra,* in the following language: "The question in controversy (and upon this there is a conflict of judicial opinion) is whether a creditor who is not a party to the agreement between the partners creating this new relation between them, and does not assent to it, but merely has notice of it, is bound by it, and must, after such notice, treat the retiring partner, not as a joint debtor, but as a surety. We have no hesitation in holding that, under such circumstances, the partners continue to be bound as joint debtors to the creditor, pursuant to their original obligation. In our view there is no reasonable ground for a difference of opinion upon this. The obligation of the partners to their creditor was created by contract. They were joint obligors. By the contract they subjected themselves to all of the obligations of that relation, and conferred upon their creditor all of the benefits arising from it. To sustain the doctrine that the partners can, by their own act, change the character of their obligation to their creditor, and without his assent, express or implied, violates the fundamental principles of the law of contract. It abrogates an express contract without the consent of the party beneficially interested, and forces upon him a new contract to which he has not given his assent."

We do not find any language in the act of 1907 which would warrant the conclusion that by its passage the Legislature intended to abrogate the above rule pertaining to the liability of retiring partners or the reasons upon which it is predicated. In fact

as we interpret the language in the case of *Hall* v. *Essner, supra,* our Supreme Court has in effect held to just the contrary view.

Appellant contends that "Sec. 11 expressly and affirmatively fixes the time when the first lien on the bank's assets in favor of depositors shall attach 'in case it is wound up' and the then owner or owners liable for the balance, if any, it negatives liability to depositors at any other time by any others than the then owners." A reasonable construction of Sec. 11 does not sustain this contention. "It is clear from Sec. 11 that the legislative intent was to treat the owners of a private bank as partners as respects debts of the bank." *Hall* v. *Essner, supra.* It is also clear that it was the legislative intent by this section to give depositors in the bank a first lien over other creditors of the bank on its assets in case it is wound up. Except as the rule may be modified by statute, it has long been the law in this state that "the individual creditors have a priority in the administration of individual assets, and partnership creditors can only have distribution of the surplus." This doctrine is *stare decisis. Bond* v. *Nave* (1878), 62 Ind. 505; *Bake* v. *Smiley* (1882), 84 Ind. 212; *New Market National Bank* v. *Locke* (1883), 89 Ind. 428; *Schnull* v. *Schnull* (1906), 39 Ind. App. 556, 80 N. E. 432; *American Bonding Co.* v. *State* (1907), 40 Ind. App. 559, 82 N. E. 548; 47 C. J. sec. 447, p. 939. It is clear that by the provisions of this section the Legislature intended to and did broaden the rights of creditors in a partnership bank by giving such depositors the right to "share in the general assets of the owner or owners, alike, with general creditors." This section does not say that in case the bank is wound up, that it is the then owner or owners of the bank who shall be liable for any balance remaining unpaid, thus abrogating the rule above

referred to under which retiring partners are liable for partnership debts existing at the time of such retirement. To place such an interpretation upon this section of the statute as that for which appellant contends would deprive it of all its beneficial attributes in behalf of the depositor, and would offer a means for his entrapment, for after he had created the relation of debtor and creditor with the bank by depositing his money therein, any one or all of the then owners of the bank could thereafter retire from the partnership, terminate the contract of debtor and creditor, then existing between themselves and the depositors, and in the event the bank is wound up after such retirement as a partner, escape liability for such existing partnership debts. We do not think the legislature intended any such result by the enactment of sec. 11, otherwise it would have said so in no uncertain language.

"A partnership is in effect a contract of mutual agency, each partner acting as a principal in his own behalf and as agent for his copartners; the functions, duties, rights, and liabilities of the partners in a great measure comprehending those of agents, and the general rules of law applicable to agents apply with equal force in determining the rights and liabilities of partners. The basis of the liability of the partners is the fact that they are principals in any and every transaction, and not because they are credited and held out as partners." 47 C. J. Sec. 289, p. 826, authorities there cited; 20 R. C. L. Sec. 94, p. 882, authorities there cited; 1 Rowley, Modern Law of Partnership, Sec. 69, p. 217. While Sec. 4 of the Act of 1907 requires the partnership to certify to the Auditor of State, "The names of the officers who are to manage the business of said bank," thus apparently resting the power to represent the partnership as its agents in cer-

tain persons, the Act does not restrict the power of such agents to enter into contracts within the scope of the partnership business which will be binding on each member of the partnership as a principal. "It is the law that the members of a copartnership are personally, jointly and severally liable for all of the indebtedness of the firm. *Dean* v. *Phillips* (1861), 17 Ind. 406; *Hardy* v. *Overman* (1917), 36 Ind. 549; *Ralston* v. *Moore* (1886), 105 Ind. 243; *Schnull* v. *Schnull, supra.*

"The creditors of a firm may sue the partners at law, personally, and recover personal judgments against them for the indebtedness owing them by the firm." *Swing* v. *Hill* (1909), 44 Ind. App. 140, 143, 88 N. E. 721; *United States Fidelity etc., Co.* v. *Smith* (1906), 40 Ind. App. 136, 81 N. E. 226. That is what the plaintiffs did in this case.

Appellant agrees that under the common law when a member of a partnership retires from the firm, in order to escape liability, on future contracts entered into by the firm, if it continues in business, he must give such notice of his retirement therefrom as the circumstances of each case demands. But, says appellant, this rule of law is suspended by Sec. 6 of the Act of 1907, which provides that if the interest of any member in the partnership should change by sale, then the auditor of state shall be notified of such change and the printed notice of the owners posted in the banking room shall be changed accordingly, which constitutes notice to the depositors, that the retiring partner is no longer responsible as a partner to the depositors at that time or any other time, that by virtue of the other provisions of the act his liability ceases and no one but an owner or owners at the time of the winding up of the affairs of the bank is liable to the depositors, and then only for the balance after the depositor's

first lien on the assets of the bank is exhausted. The provisions of the act do not justify the contention or conclusion reached by the appellant. All the legislature did in this section of the act was to prescribe the kind of notice to be given by a member of the partnership in the event of his retirement from the firm. The purpose of the giving of this notice could not by any method of reasoning, be held to terminate the liability of retiring partners on obligations and contracts entered into previous to such retirement. We find no authority and no language in the Act of 1907, which can be construed as having the effect, were it possible for the legislature to enact such a law, of terminating liability on existing partnership contracts in that manner by retiring partners. It is certain that the only purpose and result intended-to be accomplished by the giving of the notice provided for in Sec. 6 is to protect the retiring partner from liability on partnership contracts entered into after such retirement.

Appellant contends that there is no finding that he sold his stock with a fraudulent intent, and further, that before there could be any liability imposed upon him, it was necessary to allege and prove that the bank was insolvent at the time he disposed of his stock and retired as a partner; that the issue of insolvency of the bank on May 13th, 1930, was not tendered by the pleadings, and that therefore, the finding of fact that the bank was insolvent on that date is outside the issues and a nullity. These contentions do not aid appellant. Under the Act of 1907, when the appellant sold his stock in the bank on May 13, 1930, he with the other members of the partnership were jointly and severally liable for all the then outstanding obligations of the bank as principals, and under the act, the partners in the bank could be sued with the bank as parties

defendant or they could be sued alone for obligations owing by the bank. *Borgman* v. *State* (1937), 211 Ind. 395, 5 (2nd) N. E. 522. The plaintiffs below, were not bound to see or suspect the ulterior or sinister purpose, if such there was, working in the mind of the retiring partner (appellant) to escape liability by the sale of his stock and the giving of notice. *Clenchfield* v. *Lundy, supra.* Appellant could not terminate the relation of debtor and creditor existing between himself as a partner in the bank and the depositors thereof by a mere sale of his stock therein and retirement as a partner, and this would be true whether, at the time of such sale and retirement the bank was solvent or insolvent. The only reason the court could have to inquire into any solvency or insolvency of the bank would be to marshall the assets thereof for distribution among creditors as provided in Sec. 11. *Schnull* v. *Schnull, supra.*

Other contentions are made, but they are of such a character, that in view of what we have already said it is not necessary to discuss them.

On the finding of facts which we have heretofore set out the courts' conclusions of law number one and three are correct.

Finding no error, the judgment is affirmed.

Curtis, Bridwell, J. J., dissent.

### ON PETITION FOR REHEARING

WOOD, C. J.—On February 11, 1937, the judgment of the lower court was affirmed on the assignment of errors presented by the appellant. On the same date said judgment was affirmed on the cross-assignment of errors presented by certain of the appellees named and designated in the original opinion, upon the ground that the record of the lower court upon which said cross-assignment of errors was founded was not properly cer-

tified and that therefore no question was presented for our consideration by the cross-assignment of errors.

On March 31, 1937, the appellant filed his petition for a rehearing. On April 1, 1937, he filed his brief in support of his petition for a rehearing. On April 10, 1937, the appellees Thomas H. Seward, Oscar Phillips, Luther Pulley, Dr. J. C. Knight, Dr. J. T. Barnett, for themselves and all other like creditors, as depositors of the Citizens State Bank of Jonesboro, Indiana, filed a petition accompanied by briefs for a rehearing on their cross-assignment of errors. On April 16, 1937, these same appellees filed a motion to dismiss appellant's petition for a rehearing upon the ground that appellant failed to comply with rule 29 of this court in that his petition for a rehearing and briefs in support thereof were not filed at the same time. On the same day the same appellees filed a motion to reinstate their appeal upon their cross-assignment of errors. On April 23, 1937, the appellant filed a verified counter showing to said appellee's motion to dismiss his petition for a rehearing, together with briefs in support thereof.

The petition of the appellees, Thomas H. Seward et al., to reinstate their appeal on the cross errors assigned by them and their petition for a rehearing on their cross-errors are both hereby denied.

In support of their motion to dismiss the appellant's petition for a rehearing the appellees cite and rely upon the case of *Fort Wayne, etc., Co.* v. *Davis* (1929), 90 Ind. App. 30, 165 N. E. 764. The facts in that case and the case at bar in so far as they relate to the filing of the petition for a rehearing are so similar that they cannot be distinguished and were we inclined to follow the precedent established by that case we would be required to sustain the appellees' motion.

Section 2-3236 Burns 1933, §509 Baldwin's 1934, pro-

vides that when any cause is determined in the Appellate Court, the clerk shall forthwith notify the clerk of the court below that it is determined, and, "at any time within sixty (60) days after such determination, either party may file a petition for a rehearing."

Rule 29 of this court provides that: "Application for a rehearing of any cause shall be made by petition, separate from the briefs, signed by counsel, filed with the clerk within sixty days from the rendition of the judgment, stating concisely the cause for which the judgment is supposed to be erroneous, which application shall be supported by briefs only, with argument set out therein, if desired. *Ten copies of the brief must be filed at the same time the petition is filed,* and one copy of the brief shall be delivered at once by the clerk to each judge." (Our italics.)

Appellees insist that that phrase in the rule above which we have italicized requires the briefs in support of the petition for rehearing to be filed on the same day, and at the same time that the petition for rehearing is filed, and the case above cited so holds. By the provisions of Sec. 2-3236 (§509 Baldwin's 1934), *supra,* litigants are given sixty days from the date of the determination of a cause in which to file a petition for a rehearing. Rule 29 outlines the procedure to be followed in filing such petition within the sixty day period. We do not think the phrase "Ten copies of the brief must be filed at the same time the petition is filed" should be interpreted to mean that the petition and briefs must be filed on the same day, but that it must be interpreted to mean that the petition for rehearing must be filed within sixty days from the date of determination of the cause and that the briefs in support thereof must be filed within the same period of time and not after the sixty day period of time from the date of

determination of the cause has elapsed. That is to say that under the statute and rule of this court litigants have a period of sixty days from the date on which a cause is determined in which to file a petition for rehearing and briefs in support thereof; that the petition for a rehearing can be filed at one time and the briefs in support thereof can be filed at another time, but they must both be filed "at the same time," to-wit, within the sixty day period. The interpretation and application which this court made of rule 29 in the case of *Fort Wayne, etc., Co.* v. *Davis, supra,* is too strict and technical and if adhered to, would deprive litigants of the right granted to them by Sec. 2-3236 (§509 Baldwin's 1934), *supra,* and rule 29, to file petitions for rehearing at any time within sixty days from the date a cause is determined by this court, and in so far as that case conflicts with the views here expressed it is overruled. The motion of the appellees, Thomas H. Seward et al., to dismiss appellant's petition for a rehearing is overruled. All members of the court are in harmony on the above rulings.

Appellant's petition for a rehearing is denied.

Judges Bridwell and Curtis are of the opinion that appellant's petition for a rehearing should be granted and therefore dissent from the ruling of the majority of the court in denying appellant's petition for a rehearing.